45310. HAWES v. BIGBIE.

DEEN, Judge. 1. On a prior appearance of this case the Court of Appeals entered an order as follows: "On motion it is ordered that counsel for appellant be allowed to withdraw this case and that the judgment of the court below stand affirmed." Such an order permitting voluntary withdrawal of a pending appeal prior to decision is not an adjudication of affirmance on the merits but merely a statement of existing law that the judgment of the trial court remains in the same state as though no appeal had been filed.

2. Where the legislature adopts in a statute phraseology from the laws of the United States or a jurisdiction thereof which has been interpreted by the courts of that entity it may be assumed that the language adopted is intended to be construed in the manner in which it was understood by the jurisdiction of origin. *Tamiami Trail Tours v. Ga. Pub. Serv. Comm.,* 213 Ga. 418, 424 (99 SE2d 225). The language of *Code Ann.* § 92-8436 (Ga. L. 1937-38, Ex. Sess., pp. 77, 94; 1945, pp. 272, 274; 1955, pp. 455, 458) providing for refunds, appropriation of funds and procedure, may in the first sentence be ambiguous as to whether it is referring to taxes "erroneously or illegally assessed" and thereafter collected, or taxes erroneously or illegally collected, as contended by the appellee. Subparagraph (b), however, states that "an erroneous or illegal collection of tax or license" may be refunded. The language is taken from 26 USCA § 7422 (26 USCA, 1934, § 1672) which authorizes refunds in cases of taxes "erroneously or illegally assessed or collected" and we construe the meaning to be the same in both cases. The Supreme Court of the United States held that the right given to sue for refund of taxes illegally assessed or collected was in

the nature of an action for money had and received. Lewis v. Reynolds, 284 U. S. 281 (52 SC 145, 76 LE 293); Helvering v. Taylor, 293 U. S. 507 (55 SC 287, 79 LE 623). This court has also held that a suit for a tax refund is one for money had and received "which the plaintiff, ex aequo et bono, is entitled to recover and which the defendant is not entitled in good conscience to retain." *Oxford v. Shuman,* 106 Ga. App. 73, 79 (126 SE2d 522). "The theory of the action in a suit for refund is indebitatus assumpsit for money had and received, and the burden of proof is on the taxpayer to produce evidence that the defendant holds money which in equity and good conscience he has no right to retain." *Hawes v. Smith,* 120 Ga. App. 158 (1) (169 SE2d 823). Under *Code Ann.* § 92-8436 (b) the plaintiff may indeed, in any case where there has been an illegal collection of a tax, file his claim for a refund, but in order to prevail upon the trial of the action he must show that the taxing authority is not in equity and good conscience entitled to the money. Here we have a situation where the taxpayer may indeed owe the money which the State collected. At least, this is a disputed issue of fact. The State's method of collection was illegal in that it had no right to resort to garnishment until after a valid entry of nulla bona, and there the nulla bona entry was false and fraudulent. What the State did was unconscionable—after levying on the taxpayer's property and seizing it, and obtaining a tax illegality bond, instead of proceeding on the bond it issued a garnishment and collected a bank account belonging to the taxpayer based on a return of "no personal property found." The taxpayer is undoubtedly, if this is true, entitled to redress from someone for the tort committed upon him under color of office. These facts appearing, the garnishment proceeding itself would have been a nullity. But even though the taxpayer has been wronged, his suit for refund is based on the theory that the State has collected taxes *which he did not owe.* It may well be true either (a) that the taxpayer did not owe the money, or (b) that any money owed is represented by a valid and subsisting bond against which the State is proceeding in some other action, and that therefore he does not owe the State the money which it collected under the gar-

nishment. The status of the bond is not before us, and the tax liability is disputed. Therefore, the question of the plaintiff's tax liability, if any, should be submitted to the jury.

We adopt this view reluctantly, and in view of the authorities above quoted. Where money is owing to the State, it has its remedies for enforcement of its rights, and it should no more be permitted to take the property of its citizens unlawfully, even if the citizen is justly indebted to it, than a private person would be permitted to appropriate my automobile at will because I owe him a grocery bill. It may even be that under Fifth Amendment guarantees the State is precluded from setting up a defense based on its own wrongdoing, but this is a question not before us at this time.

*The trial court erred in granting summary judgment to the tax-payer. The denial of appellant's motion for summary judgment was proper. Jordan, P. J., Hall, P. J., Eberhardt and Whitman, JJ., concur. Bell, C. J., Pannell, Quillian and Evans, JJ., dissent.*

ARGUED MAY 6, 1970—DECIDED DECEMBER 2, 1970— REHEARING DENIED DECEMBER 17, 1970—CERT. APPLIED FOR.

*Arthur K. Bolton, Attorney General, Harold N. Hill, Jr., Executive Assistant Attorney General, William L. Harper, James B. Talley, Assistant Attorneys General,* for appellant.

*R. R. Jones,* for appellee.

EVANS, Judge, dissenting. The question in this case is whether or not the State of Georgia may perpetrate a fraud on one of its citizens and taxpayers; may act in a false, fraudulent, unconscionable, and illegal manner in collecting from the taxpayer an amount of money it claims is due as sales tax; may deny the taxpayer the right to contest the amount of the sales tax, although the State issued an execution against him, ex parte, and without any notice or opportunity to contest the correctness of the amount named in the execution; and yet not be required to restore the money illegally collected when the facts are made plainly to appear to a court of law.

The State Revenue Commissioner issued a sales tax execution against Jack Bigbie, trading as Bigbie Grocery, for approximately

$4,700 and had its agent levy said execution on the stock of goods and fixtures of defendant. Bigbie filed an affidavit of illegality and bond, and denied he owed the amount named in the execution, but admitted owing $817.46, which sum he tendered in payment. In the face of this levy, the Commissioner, through its agent, entered the following *false* entry on the execution: "Due search made and no personal property found upon which to levy the within fi. fa."

The reason for this false entry was that its agent wished to have garnishment issued against Bigbie, and under the law he could not issue garnishment until the levy was disposed of. *Code* § 92-7501 (see also Ga. L. 1957, p. 619); *Davis v. Millen,* 111 Ga. 451 (36 SE 803); *Weston v. Beverly & McCollum,* 10 Ga. App. 261 (1) (73 SE 404); *Undercofler v. Brosnan,* 113 Ga. App. 475 (148 SE2d 470). The garnishment was served upon a savings and loan association where defendant had money on deposit, and the State Revenue Commissioner collected therefrom a sufficient sum to completely pay off the execution.

Bigbie then filed his action against the Commissioner for a refund of an illegal collection of sales tax execution as is authorized under *Code Ann.* § 92-8436 (b) (Ga. L. 1937-38, Ex. Sess., pp. 77, 94; 1945, pp. 272, 274; 1955, pp. 455, 458) after the denial of his administrative remedy. The Commissioner answered, admitting the facts hereinabove set forth to be true, including the false entry of nulla bona on the execution, followed by garnishment, but denied any sums were due to Bigbie under his claim for refund.

The aforementioned applicable statute under which Bigbie proceeded, to wit: *Code Ann.* § 92-8436 (b) supra, provides in pertinent part as follows: "In any case in which it shall be determined that an *erroneous* or *illegal* collection of tax . . . has been made . . . the taxpayer . . . may . . . file a claim for refund."

Without doubt the above language includes any and all reasons why the collection was erroneous or illegal, regardless of whether the taxes were due or not due.

Both plaintiff and defendant moved for summary judgment in the court below.

The Commissioner contended in the lower court that summary judgment should be rendered against Bigbie because he contended

he did not affirmatively show that he did not *owe* the amount of the sales tax named in the execution. Bigbie contended that the question at issue in this proceeding was not whether he actually owed the sales tax, but whether or not the Commissioner had *illegally* collected the $4,700 from him, and contended that because of said illegal collection it must refund his money and place him in status quo.

The majority opinion holds, and I fully concur, in the following: "Under *Code Ann.* § 92-8436 (b) the plaintiff may indeed, in any case where there has been an illegal collection of a tax, file his claim for a refund, but in order to prevail upon the trial of the action he must show that the taxing authority *is not in equity and good conscience entitled to the money."* (Emphasis supplied.)

The majority opinion further holds, and I fully concur: "The State's method of collection was illegal in that it had no right to resort to garnishment until after a valid entry of nulla bona, and there the nulla bona entry was false and fraudulent. What the State did was unconscionable—after levying on the taxpayer's property and seizing it, and obtaining a tax illegality bond, instead of proceeding on the bond it issued a garnishment and collected a bank account belonging to the taxpayer based on a return of 'no personal property found.'"

The majority opinion further holds, and I fully concur: "Where money is owing to the State, it has its remedies for enforcement of its rights, and it should no more be permitted to take the property of its citizens unlawfully, even if the citizen is justly indebted to it, than a private person would be permitted to appropriate my automobile at will because I owe him a grocery bill."

It is a sad commentary upon the affairs of men when, in the State of Georgia, the sovereign may with immunity, resort to a method of collection of taxes against a citizen that is illegal; may act in an unconscionable manner; may act in a "false and fraudulent" manner; and yet quietly close the doors of the court in the citizen's face, albeit ever so reluctantly. I believe the citizen should prevail under this state of facts, and that the lower court should be affirmed in granting to him a summary judgment.

Nor can I agree that we should construe the meaning of lan-

guage of the Georgia statute for claims for refund to be the same as that found in the "suits for refund" statute of the Federal Internal Revenue Code. While these laws involve the same subject matter—taxes—and in particular the recovery of moneys from the collecting governments, State and Federal, the histories of the development of the State and Federal statutes are not similar, and it cannot be unequivocally assumed that every judicial construction placed on the Federal statute is controlling here. A casual reading of the two does not bear out the similarity as is assumed by the majority, that the State of Georgia adopted verbatim the Federal Internal Revenue Code, and, in particular, the method of refund of moneys illegally collected.

For I do not even consider the language here to be ambiguous, requiring construction. If the statute is clear and unambiguous "it must be taken to mean what has been clearly expressed and no occasion for construction exists." *Forrester v. Continental Gin Co.,* 67 Ga. App. 119, 128 (19 SE2d 807). See also *Neal v. Moultrie,* 12 Ga. 104, 110; *Hopkins v. Florida Central &c. R. Co.,* 97 Ga. 107, 109 (25 SE 452); *Barnes v. Carter,* 120 Ga. 895, 898 (48 SE 387); *Standard Oil Co. v. State Revenue Commn.,* 179 Ga. 371, 375 (176 SE 1). Thus the statute stands self-interpreted, and courts must enforce it, however absurd it may be. We cannot say that we do not believe this was what the legislature intended. Without doubt, "an erroneous or illegal collection" includes any and all reasons why the collection was erroneous or illegal, whether because the taxes were not due and likewise whether the Commissioner illegally or erroneously or fraudulently collected the same. Let the legislative branch correct the law, not the courts, if this was not the intention. The averment of the true and correct tax liability for the alleged tax assessment made is not a condition precedent for a claim for refund by a taxpayer. *Oxford v. Shuman,* 106 Ga. App. 73 (2b) (126 SE2d 522).

I am authorized to state that Chief Judge Bell and Judges Pannell and Quillian concur in this dissent.